IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ANN D., individually and on behalf of M.D., and on behalf of H.D., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF WYOMING,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Case No. 2:20-cv-00197-JNP<br><br>District Judge Jill N. Parrish |

## INTRODUCTION

Before the court is a Motion to Dismiss filed by Defendant Blue Cross and Blue Shield of Wyoming ("Blue Cross Wyoming" or "Blue Cross"). Plaintiffs Ann D. ("Ann"), M.D. ("M.") and H.D. ("H.") assert two causes of action against Defendant for (1) breach of the terms of Ann's insurance policy and (2) violation of the Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act"). Defendant moves the court to dismiss this action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), lack of subject matter jurisdiction under Rule 12(b)(1), and for failure to state a claim for relief under Rule 12(b)(6). For the reasons set forth herein, the court GRANTS Defendant's motion to dismiss this action under Rule 12(b)(2) for lack of personal jurisdiction.

## FACTUAL BACKGROUND[1]

This dispute arises from Blue Cross Wyoming's denial of insurance benefits to Ann, M., and H., relating to the treatment of M. and H. Ann is the mother of M. and H., and H. is a minor. Plaintiffs reside in Wyoming. Blue Cross Wyoming is an independent licensee of the Blue Cross and Blue Shield Association and was the insurer of the policy that provided coverage for Plaintiffs during the time of M. and H.'s relevant medical care. Ann purchased her Blue Cross Wyoming policy through the Health Insurance Marketplace created under the Affordable Care Act ("ACA").

According to the Complaint, "M. and H. were admitted to intermediate level mental health treatment programs due to a history of mental health and behavioral problems including Oppositional Defiant Disorder, depression, anger, school failure, substance abuse, chronic lying, social problems, and family conflict." ECF No. 2 ¶ 10. M. received medical care and treatment at Visions Adolescent Treatment Center ("Visions") from May 15, 2016 to January 30, 2017. H. received treatment at Cherry Gulch Residential Care Facility ("Cherry Gulch") from March 25, 2016 to July 18, 2017, and then at Evoke at Entrada ("Evoke") from December 1, 2017 to March 30, 2018. These facilities provide sub-acute treatment to adolescents with mental health, behavioral, and/or substance abuse problems. Visions is located in California, Cherry Gulch is in Idaho, and Evoke is in Utah.

Blue Cross Wyoming denied coverage for H.'s treatment, explaining that "[Ann's] coverage [did] not provide benefits for this service." *Id.* ¶ 13. On August 3, 2018, Ann appealed

---

[1] The court recites the facts in this section according to Plaintiffs' allegations in the Complaint, in the light most favorable to Plaintiffs. *See Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014) ("At the motion-to-dismiss stage, [the court] must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." (quoting *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013))).

the denial in a letter to Blue Cross Wyoming. In her letter, she quoted a portion of her policy that stated "Mental Health Services and Substance Use Disorder Services must be provided by a properly licensed or certified Healthcare Provider." *Id.* She noted that the care facilities where H. received treatment were properly licensed. She also explained that the policy was subject to the Parity Act, which requires parity in insurance coverage for mental health services and comparable medical or surgical benefits. She argued that because her policy covered "intermediate level medical and surgical care," Blue Cross Wyoming's denial of coverage for H.'s intermediate level mental health treatment violated the Parity Act.

Ann also asserted in her letter that while she had received an Explanation of Benefits regarding the denial of H.'s care, she had "received no acknowledgement or response from [Blue Cross Wyoming]" regarding M.'s treatment at Visions, despite her repeated requests. *Id.* ¶ 11. When Blue Cross Wyoming eventually did process the claims relating to M.'s treatment, it denied them, once again stating that her policy did not cover such services. Ann likewise appealed this decision in a February 6, 2019 letter, making arguments similar to those in her earlier letter.

Blue Cross Wyoming also denied Ann's appeals, stating that the facilities where H. and M. received care "[did] not have enough clinically benefitted hours or staffing for Residential Treatment or Intensive Outpatient Treatment." *Id.* ¶ 25. Plaintiffs thereafter filed this action, alleging two causes of action: (1) breach of the terms of the insurance policy and (2) violation of the Parity Act. Blue Cross Wyoming moves to dismiss the entire action on the grounds that this court lacks personal jurisdiction over it and that it lacks subject matter jurisdiction over Plaintiffs' claims. It also moves to dismiss the second cause of action for failure to state a claim. Finally, it moves in the alternative to transfer the case to the District of Wyoming on grounds of improper

3

venue. Because the court concludes that it lacks personal jurisdiction over Defendant, it addresses only the issue of personal jurisdiction.

## LEGAL STANDARD

Plaintiffs bear the burden of establishing personal jurisdiction. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). When the issue of personal jurisdiction "is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a *prima facie* showing." *Id.* For the purpose of determining whether Plaintiffs have made a *prima facie* showing of jurisdiction, the court must "resolve any factual disputes in the plaintiff[s'] favor." *Id.*

## DISCUSSION

Blue Cross argues that its contacts with Utah are insufficient to create either specific or general jurisdiction in this forum. Plaintiffs acknowledge that Blue Cross is not subject to general jurisdiction, but assert that Blue Cross is subject to this court's specific personal jurisdiction.

**Specific Personal Jurisdiction**

To determine whether it has personal jurisdiction over Blue Cross, the court first evaluates whether exercising personal jurisdiction satisfies Utah's long-arm statute and second, whether exercising personal jurisdiction comports with principles of constitutional due process. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). Utah's long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." UTAH CODE § 78B-3-201(3). Therefore, the court need only address whether the exercise of personal jurisdiction over Defendant comports with due process demands.

"The Supreme Court has held that, to exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a

4

lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In the case of specific jurisdiction, courts undertake a two-step inquiry. They must consider "(a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)).

**Minimum Contacts**

"The minimum contacts test for specific jurisdiction encompasses two distinct requirements: (i) that the defendant must have 'purposefully directed its activities at residents of the forum state,' and (ii) that 'the plaintiff's injuries must arise out of [the] defendant's forum-related activities.'" *Old Republic*, 877 F.3d at 904 (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011)). A "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum state that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Indeed, "the mere fact that [a defendant's] conduct affected [a plaintiff] with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 291. Rather, "the defendant's suit-related conduct must create a <u>substantial</u> connection with the forum State." *Id.* at 285 (emphasis added).

In this case, Blue Cross argues that Plaintiffs failed to allege that Blue Cross deliberately targeted Utah in any way. Rather, Plaintiffs allege only a right to payment "for medical treatment that **Plaintiffs** chose to undertake in Utah." ECF No. 26 at 14. Blue Cross points out that "Plaintiffs made the benefit claim in Wyoming, the claim was adjudicated by [Blue Cross] in Wyoming, and

5

the claim was denied in Wyoming." *Id.* at 15. Based on these facts, Blue Cross argues that it never purposefully directed its activities into the forum and that any injury suffered by Plaintiffs occurred in Wyoming.

Plaintiffs do not dispute that their decision to use a Utah medical facility does not, on its own, constitute a minimum contact by Blue Cross. *See* ECF No. 31 at 6. Rather, it asserts that Blue Cross "conducts its business nationwide" by making its benefits available to participants outside of Wyoming[2] and by covering treatment received outside its geographic area, including in Utah. Plaintiffs contend that these are "facts [Blue Cross Wyoming] wanted prospective purchasers of its products to take into account as being reasons to buy its insurance." *Id.* Accordingly, Plaintiffs argue that Blue Cross Wyoming "reasonably anticipates that some of the insureds under policy will reside or receive treatment in Utah, or that a dispute may arise there." *Id.* at 5. In short, Plaintiffs argue "[t]he basis for jurisdiction in this case is not the fact that H. received mental health treatment in Utah, but that [Blue Cross's] activities [ ] are directed towards healthcare providers in Utah." *Id.* at 6.

The court is not persuaded by Plaintiffs' argument. Every court to have considered the issue has concluded that insurers do not purposefully direct their activities at a forum when their only interaction with the forum is providing coverage to a person within the forum. In *Perez v. Pan American Life Insurance Co.*, the plaintiffs sued their insurer to recover policy benefits after they

---

[2] Blue Cross Wyoming is a licensee of Blue Cross Blue Shield. It participates in the Blue Cross Blue Shield Association, through which it enters into "Inter-Plan Arrangements" with other such licensees. *See* ECF No. 31-1 § B. Under these arrangements, medical providers outside of Wyoming may contract with local Blue Cross licensees to provide coverage. *See id.* For those out-of-state providers who do not contract with the local Blue Cross licensee, Blue Cross Wyoming promises to "remain responsible for doing what [it] agreed to in the [insurance policy]." *Id.* In short, Blue Cross Wyoming ensures that plan participants receive coverage nationwide.

6

incurred extensive medical bills relating to their son's treatment at a hospital in Houston, Texas. 96 F.3d 1442 at *1 (5th Cir. 1996) (unpublished table opinion). The insurer in that case, Seguros, was a Guatemalan corporation. *Id.* The Tenth Circuit ruled:

> We find no evidence in the record that Seguros has any contacts with the state of Texas, let alone "minimum contacts" to allow the federal court to exercise jurisdiction in this case . . . . The insurance policy at issue was solicited and issued in Guatemala, and all billing and claims handling occurred in Guatemala. In fact, the only arguable "contacts" Seguros has with Texas is the worldwide coverage language in the policy itself and Plaintiffs-Appellants' claim that a Seguros representative approved treatment at Texas Children's Hospital in Houston, Texas. The court's exercise of jurisdiction based solely on these thin "contacts" would offend the traditional notions of fair play and substantial justice.

*Id.* at *2. *See also Whittaker v. Med. Mut. Of Ohio*, 96 F. Supp. 2d 1197, 1200–01 (D. Kan. 2000) (declining to exercise personal jurisdiction over insurer whose only contact with forum was a covered individual living in forum and claiming benefits); *St. Luke's Episcopal Hosp. v. La Health Serv. & Indem. Co.*, Case No. H-08-1870, 2009 WL 47125, at *8 (S.D. Tex. Jan. 6, 2009) ("The weight of authority, however, holds that an out-of-state insurer does not subject itself to personal jurisdiction in a forum state by verifying coverage for treatment of the insured in that state and paying some of the bills for that treatment."); *Wiegering v. Blue Cross & Blue Shield of Mass., Inc.*, No. 16-23031-CIV, 2017 WL 1294907 at *8–9 (S.D. Fla. Feb. 2, 2017) (finding insurer's contacts with Florida insufficient to confer personal jurisdiction where insurer provided a health plan for a Boston-based employer, Boston Scientific, and its only connection to the forum was Boston Scientific employees residing in Florida availing themselves of the plan).

Plaintiffs argue that these cases are distinguishable because Blue Cross Wyoming offers nationwide coverage. It contends that "[h]ad [Blue Cross Wyoming] limited its coverage only to services rendered by network and non-network providers in Wyoming or a service area excluding

Utah, there would be less factual basis for Ann to argue that this Court has specific jurisdiction." But at least two of the above-cited cases explicitly rejected similar arguments. *See Perez*, 96 F. 3d at *2 (worldwide coverage language in policy did not subject Guatemalan insurer to personal jurisdiction in Texas); *Whittaker*, 96 F. Supp. 2d at 1200 (explaining that the insurer was "obligated to carry out its insurance contracts no matter in which state treatment is sought" and that therefore "the fact that [the insurer] acknowledged its obligation to pay under the insurance plan if plaintiff sought treatment in Kansas [was] not purposeful availment.").

This court finds the reasoning in these decisions persuasive. If courts were to adopt the approach suggested by Plaintiffs—holding that merely offering nationwide coverage sufficed to establish personal jurisdiction over an out-of-state insurer—nearly every insurer would be subject to personal jurisdiction in every state, no matter how attenuated the contacts with the state. But such a result is entirely inconsistent with the holding of the Supreme Court *Walden* that a "defendant's suit-related conduct must create a <u>substantial</u> connection with the forum State." *Walden,* 571 U.S. at 285 (emphasis added).

Moreover, Plaintiffs' specific jurisdiction argument here is even weaker than those in the above-cited cases. While the defendant insurers in several of those cases pre-approved treatment or paid for some benefits received in the relevant forum, there is no suggestion that Blue Cross Wyoming authorized H.'s treatment in Utah, and it apparently denied Plaintiffs' claims in their entirety. *See, e.g., Perez*, 96 F.3d at *1 (insurer's agent pre-approved treatment at the Houston medical center); *Whittaker*, 96 F. Supp. 2d at 1199 (Ohio insurer represented that it would cover treatment in Kansas and did pay for some of plaintiff's claims related to the treatment in Kansas). The court therefore concludes that Plaintiffs have not met their *prima facie* burden of establishing that Blue Cross Wyoming purposefully directed its activities at Utah. Because Blue Cross

Wyoming lacks minimum contacts with the forum, this court may not exercise personal jurisdiction over it.³ Because the court lacks personal jurisdiction over Blue Cross Wyoming, it need not reach Defendant's other offered grounds for dismissal.

## CONCLUSION AND ORDER

For the foregoing reasons, Blue Cross Wyoming's Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2) is GRANTED. Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.

DATED February 12, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

³ It should also be noted that even if the court concluded that Defendant had sufficient minimum contacts with the forum, there is no indication that Plaintiffs' injury arises out of those contacts. The alleged injury in this case is Blue Cross Wyoming's denial of benefits. But the denial of benefits did not arise from any contacts Blue Cross may have had with the forum. The claim adjudication and denial of benefits occurred in Wyoming and involved Wyoming parties. *See, e.g.*, *Satterfield v. Gov't Employees Ins. Co.*, 287 F. Supp. 3d 1285, 1294 n.9 (W.D. Okla. 2018) (finding no personal jurisdiction over GEICO in Oklahoma because GEICO denied benefits to a Virginia resident under a Virginia policy: "GEICO's decision that [plaintiff] was not entitled to [ ] benefits [ ] gives rise to this lawsuit, and not the automobile accident [that took place in Oklahoma].").